UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
WILLIAM DIXON,

                Petitioner,

     –against–

WARDEN WILLIAM LEE,

                Respondent.
-----------------------------------------------------------x

IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ SEP 2 9 2017 ★

BROOKLYN OFFICE

**MEMORANDUM AND ORDER**

14-CV-7162 (SLT)

**TOWNES, United States District Judge:**

After a jury found Petitioner William Dixon guilty of robbery in the third degree, he was sentenced as a discretionary persistent felony offender to a term of fifteen years to life on August 12, 2010. Petitioner, who is currently incarcerated in a state correctional facility, now brings this *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction and sentence. For the reasons set forth below, the petition is **DENIED.**

## BACKGROUND

On the night of July 16, 2008, while pushing his infant son in a stroller through an alleyway off Kingston Avenue in the Crown Heights area of Brooklyn, Joseph Vogel was mugged and deprived of his cell phone and a digital camera stowed in the child's stroller. A witness to the mugging, one Dov Greenfeld, chased the assailant. After the assailant eluded Greenfeld by entering a building, Greenfeld called 911 to report the incident. Minutes later, Vogel saw his assailant street-side, holding his phone and camera, and called out to his friend, Shmuel Raskin, to give chase. Raskin chased the man onto Carroll Street, where at least two police had just arrived in response to Greenfield's 911 call. The officers joined the chase and caught and restrained that man, the Petitioner here, and recovered Vogel's cell phone and digital camera from his person. Petitioner was then arrested and later indicted and charged with robbery

in the first, second, and third degrees, grand larceny in the fourth degree, assault in the second and third degrees, and endangering the welfare of a minor.

*The Trial*

Trial commenced on May 13, 2010. The Government presented five witness: Vogel, Greenfield, Raskin, and two police officers present at the scene of the arrest, Erika Mims and Denise Klass.

Vogel testified first, stating that on the afternoon in question, he set out on an errand with his 8-month-old son in a stroller and, while walking through an alleyway, heard a man yell "I've got a gun, give me your money" from behind him. (T. 40-43).[1] He turned and saw an African American male in a sleeveless gray shirt (whom he identified in court as Petitioner), holding his arm out with a bag over his hand as though he were aiming a concealed gun. (Tr. 43-46). Vogel testified that he then grabbed at Petitioner's hand and removed the bag, which revealed not a gun but a hand with an outstretched finger. Petitioner then lunged at him and punched him in the jaw, causing his cell phone to fall from his pocket onto the street. (Tr. 47-54). Petitioner then snatched the phone from the ground and, after pacing around in a menacing manner, retrieved Vogel's digital camera from a compartment in the stroller that held Vogel's infant son. (Tr. 53-57).

Vogel further testified that he then noticed Greenfield observing the scene from the foot of the alleyway and motioned for his help. Greenfield then chased after Petitioner, according to Vogel, and Petitioner immediately fled. (Tr. 58-60). After Petitioner fled, Vogel continued his walk onto a busy street and encountered Raskin, to whom he spoke about incident. Moments

---

[1] Numbers in parentheses preceded by "Tr." denote pages in the transcript of the trial. Numbers in parentheses preceded by "S." denote pages in sentencing transcript. Those documents can be found at ECF No. 8-1 pages 36-376 and 378-444, respectively.

later, just after he parted ways with Raskin, Vogel saw Petitioner in an adjacent alleyway holding his phone and camera, and he screamed for Raskin to pursue him. (Tr. At 60-64). A few minutes after Raskin chased Petitioner away, Vogel arrived on Carroll Street, where Petitioner had fled and been caught. He was met there by Officer Mims, who presented him with his phone and camera. (Tr. 67-69). Vogel then identified Petitioner, who was now in handcuffs and sweat soaked, as his assailant. (Tr. 68-69). Vogel testified that his view was unimpeded at all relevant times, as the events took place in "broad daylight" and on a clear day. (Tr. 47). During cross-examination, Petitioner's counsel elicited testimony from Vogel establishing that he had only minor injuries from the punch, reinforcing that the phone fell and was not taken directly from his person, thereby laying the groundwork for exposing contradictions with what Vogel had reported to the police. (Tr. 87-107)

Greenfeld testified next and generally corroborated Vogel's story. (Tr. 113-46). He stated that while smoking at the foot of an alleyway he noticed what appeared to be two men—one Jewish man wearing religious garb and one African American male in a gray sleeveless T-shirt—squaring off when the Jewish man beckoned for his help. (Tr. At 116-18). As he approached, the black male turned and faced him momentarily and fled upon seeing him. (Tr. at 118). Greenfeld then gave chase, after "slowing down" to receive assurances that Vogel had been robbed and was not seriously harmed. (Tr. at 119-122). Greenfeld further testified that Petitioner looked back at him several times during the chase, which ended at a building on Carroll Street, where he called 911 from the sidewalk. (Tr. 122-27). The police arrived approximately six minutes later, just as he noticed Petitioner had reemerged and was crossing the street a few doors down, and he gave chase again. (Tr. 128-134). The police followed suit and once they restrained Petitioner, Greenfeld left and returned to his own business. On cross-

examination, defense counsel established that Greenfeld did not recognize the shirt in Petitioner's arrest photo, that Greenfeld saw no weapons, that Vogel seemed unharmed in the alleyway, that Greenfeld lost sight of the assailant during the chase, and that Greenfeld had uncertain memories of several minor details. (Tr. 134-39.)

Officer Mims then took the stand and testified that when she arrived on scene she saw a "black man running and two to three male whites running behind him." (Tr. 151). The black male had on a gray sleeveless shirt, jeans, and white sneakers, matching the description provided in the 911 call, and Mims identified Petitioner in court as the same man. (Tr. 151-53). Mims further testified that she and other officers, including Officer Klass, cornered Petitioner in a vestibule of a building, where he "flailed" in efforts to resist before being handcuffed. (Tr. 152-154). She then left the building and met with Vogel, who promptly identified Petitioner as his assailant and a phone and camera recovered from Petitioner as his own. (Tr. 156-60) When presented with Petitioner's precinct photo, Mims noted that his shirt was different from the sweaty one he wore at the time of the arrest. (151-56). She also admitted to returning the camera and phone to Vogel later the same day. (Tr. 160). On cross-examination, defense counsel drew testimony suggesting that Vogel had misreported or exaggerated his injuries when speaking to Mims, that Vogel had erroneously reported that Petitioner had removed the phone directly from his pocket, and that both Vogel's and Mims' testimony otherwise contradicted the criminal complaint she prepared the day of the arrest. (Tr. 162-71).

Officer Klass then largely corroborated Officer Mims' testimony. She testified that she arrived at the scene with Mims and saw the Petitioner in gray sleeveless shirt being chased across Carroll Street. (Tr. 182-85). When she and Mims cornered him in a building vestibule, he flailed his arms until they subdued and cuffed him. (Tr. 187-88). He was covered in sweat, she

recalled, and she recovered a phone and camera from his front pockets, which she then turned over to Mims. (Tr. 188-89). On cross-examination, defense counsel probed several points, establishing some minor inconsistencies with Greenfeld's testimony, and establishing that Klass had no memory of seeing the shirt that Petitioner wore in his arrest photo. (Tr. 190-96).

Finally, Raskin took the stand and generally corroborated Vogel's account. Specifically, Raskin testified he was on his way to a local synagogue when he saw Vogel, "flustered" looking, when Vogel asked to borrow his cell phone.[2] (Tr. 213-21). After loaning Vogel his cell phone, Raskin proceeded a few steps into the synagogue until he heard Vogel screaming and gesturing towards a black male about six feet away, who promptly fled, and Raskin gave chase. (Tr. 222-23). Raskin testified that he briefly lost sight of the man when he rounded a corner and entered a "tunnel," but ultimately caught up to him and saw him walking at a normal speed, as though he thought he had lost Raskin, across Carroll Street. (Tr. 223-26). At that point he called out to a crowd of people on the block, including police officers, who then pursued and caught the man he had chased. (Tr. 227-38). He then retrieved his phone from Vogel and left the scene. (Tr. 243). Raskin never identified the man he pursued in court. On cross-examination, defense counsel elicited that Raskin did not recall seeing any female police officers and probed other matters with little success. (Tr. 238-42).

The government rested after Raskin's testimony and the defense rested as well, calling no witnesses. (Tr. 243). Defense counsel then orally moved for dismissal of the entire case "based upon the proposition that the People have failed to prove guilt as to each element of the crimes [charged] beyond a reasonable doubt." (Tr. 245). In response, the court orally dismissed the

---

[2] The government was unable to solicit testimony regarding what Vogel told Raskin before borrowing his cell phone in light of defense counsel's hearsay objection. (*See* Tr. 215-20).

grand larceny charges and, as "a matter of discretion," decided not to charge endangering the welfare of a minor. (Tr. 246).

During closing arguments defense counsel ably emphasized the government's burden and the presumption of innocence. The main thrust of his argument suggested that the government failed to establish elements of second degree robbery. He conceded that Petitioner was in possession of stolen property, but argued that the testimony did not establish physical injury or use of what appeared to be a gun, establishing the latter by emphasizing that Officer's Mims' initial report made no mention of a gun. (Tr. 250-55).

The trial court instructed the jury to consider two counts of second-degree robbery and, alternatively, one count of third-degree robbery. The first count of second-degree robbery required a finding that Petitioner forcibly stole property by displaying what reasonably appeared to be a gun. The second required a finding that Petitioner caused Vogel physical injury and substantial pain when forcibly stealing his property. The court also instructed consideration of criminal possession of stolen property in the event that the jury found the Petitioner not guilty of all the robbery counts.[3] After a brief deliberation, the jury found Petitioner not guilty of second-degree robbery and guilty of third-degree robbery. The Court then scheduled a sentencing hearing, subject to adjournment upon any motion by the government for sentencing as a persistent felony offender, and directed the parties to brief relevant issues. (Tr. 339-40; *see also* ECF No. 8-2 at 12).

---

[3] Having ruled on the matter during several sidebars, (*see* Tr. 109-113; 34-36), the court did not instruct the jury to consider robbery in the first degree because the government's evidence negated the use of a gun, an element of that crime.

*Sentencing*

At a preliminary sentencing hearing (apparently scheduled after the government moved for sentencing as a persistent felony offender) the court solicited proof of Petitioner's predicate convictions, including one for burglary, two on drug charges, and two for assault charges. (S. 10-25). After challenging his client's identity as the convicted party, defense counsel presented "mitigating facts" for consideration in the event his client's identity could be proven, emphasizing the lengthy time periods between Petitioner's convictions for violent crimes, highlighting his work history, and forcibly portraying Petitioner's prior convictions as lacking true acts of violence. (S. 6-10). Regarding the burglary conviction, defense counsel emphasized the availability of evidence to show that Petitioner was 17 when convicted, that he never fully entered the house in question, and that he did not take any property after being scared away by inhabitants he did not know were present. Counsel also asserted that the Petitioner was not the primary actor behind the drug charges and advised that his burglary sentence was imposed concurrent with the sentence for one of those charges. On that basis, defense counsel ultimately urged the court to sentence Petitioner as a non-persistent offender to between 3 1/2 and 7 years.

Petitioner then testified on his own behalf and essentially admitted to his identity as the person convicted in each case. (S. 26-48). He admitted to attempting the 1986 burglary, but claimed he did not enter the house in question after being scared away. He also denied committing the first of his assault charges, which allegedly took place three months after the burglary and, according to Petitioner, stemmed from an act committed by a man who owed him money and not Petitioner himself. He claimed that he nevertheless pleaded guilty to the charges because he felt he would be convicted and would get a better deal by pleading to several charges at once. Regarding the second of the drug charges, Petitioner also denied effecting the sale and

claimed to have pleaded guilty out of an unexplained belief that trial would not end in his favor. Finally, he explained that his 1989 assault conviction (the validity of which he did not dispute) arose from injuries incurred by a bailiff who tackled him when he fled, in shock, from court after being convicted on the first of the drug sale charges, of which he continued to maintain his innocence. (*Id.* at 12).

A day after the hearing the court adjudicated Petitioner a persistent felony offender and expressed its opinion that, in light of Petitioner's ostensible preference for easy targets and lack of remorse, "extended incarceration and lifetime supervision w[ould] best serve the public interests," and sentenced him to 15 years to life. (*Id.* at 14-15).

### *Direct Appeal*

Defendant timely appealed his judgment of conviction to the Appellate Division, Second Judicial Department of New York State Supreme Court, raising two arguments in his opening brief. First, Defendant's appellate counsel argued that evidence was insufficient to prove his guilt beyond a reasonable doubt, contending that trial testimony did not establish his identity as the assailant. (ECF No. 8-2 at 17-23). Second, counsel argued that the sentencing court abused its discretion when sentencing him as a discretionary persistent felony offender, arguing that although Petitioner had the requisite predicate felony offenses, persistent offender status was inappropriate under the circumstances. (*Id.* at 23-26).

In a supplemental brief filed in the same appeal *pro se*, Petitioner also argued that he was deprived of effective assistance of counsel below because his trial attorney (i) failed to move for dismissal on the ground that the State failed to establish intent to steal, (ii) failed, more generally, to move for dismissal on specific grounds rather than categorically assert that the government did not meet its burden as to all elements of each count, (iii) failed to object during direct

examination of the government's witnesses, (iv) failed to object to proposed certain amendments to the indictment, (v) and failed to object to and move to exclude the introduction of the victim's cell phone and camera as evidence at trial.

The Second Department rejected each argument and unanimously affirmed Petitioner's judgment of conviction on June 5, 2013. *People v. Dixon*, 107 A.D.3d 735 (N.Y. App. Div. 2013). After noting that Petitioner failed to preserve his argument challenging sufficiency of evidence for appeal, the Court also rejected on the merits his contention that the People did not present sufficient proof of his identity. *Id.* at 736. The court also held that the record, as a whole, demonstrated that Petitioner was afforded effective assistance of counsel. Finally, the Court held that the sentencing court did not abuse its discretion in sentencing Petitioner as a persistent felony offender, concluding without elaboration that the Petitioner's "criminal conduct, his history, and his character warranted extended incarceration and lifetime supervision is supported by the record." *Id.* The Court of Appeals denied review several months later, on **September 10, 2013**. *People v. Dixon*, 21 N.Y.3d 1073 (2013).

### *The Instant Petition*

Petitioner filed the instant petition in December of 2014, challenging his conviction on numerous grounds. His first three claims are the same as those raised on his direct appeal: insufficiency of the evidence to establish his identity as the assailant, abuse of the sentencing court's discretion in deeming him a persistent felony offender, and ineffective assistance of counsel premised on five specific grounds listed above.

Petitioner also premises his ineffective assistance of counsel challenge on no less than 10 additional grounds not raised in state proceedings. These new grounds are that his trial attorney

failed (i) to "prepare any motions," including a motion to dismiss or reduce the charges or request a bill of particulars; (ii) to request discovery necessary to prepare a defense; (iii) to "transcribe" an omnibus motion to dismiss the indictment; (iv) to request that the sentencing court render a decision at the hearing; (v) to make a closing argument at the suppression hearing; (vi) to properly inspect (unidentified) minutes; (vii) to seek sanctions against the prosecution in connection with alleged failures to preserve evidence (Vogel's phone and camera); (viii) to object to the Court's "determination of affirmative defense when Petitioner testified before the grand jury"; (ix) to object to "excessive bolstering and vouching of Prosecution witness"; and (x) to provide any "meaningful assistance at sentencing." (*Id.*; *see also* ECF No. 16).

Noting that the petition contained both exhausted and unexhausted grounds for claiming ineffective assistance of counsel, this Court twice denied Petitioner's motions to stay and hold his petition in abeyance pending exhaustion for failure to establish "good cause" as required by *Rhines v. Weber*, 544 U.S. 269 (2005). (*See* ECF Nos. 11 & 16). In its last order, issued on June 15, 2015, the Court directed Petitioner to either (1) show cause why his petition should not be dismissed as a mixed petition, or (2) indicate whether he would prefer to (a) withdraw his entire application while pursuing his unexhausted grounds for claiming ineffective assistance of counsel in state court, or (b) abandon the unexhausted grounds and proceed with only the exhausted grounds. (ECF No. 16 at 4). The Court noted that "[f]ailure to respond and affirmatively withdraw petitioner's unexhausted claims [in 60 days] will result in dismissal of the entire petition." (*Id.*)

In response, Petitioner repeated his request to stay his petition and, alternatively, asked that the Court review his exhausted arguments. (ECF No. 18). In support of this (third) request to stay his petition, Petitioner again failed to show good cause for not exhausting the 10 new

grounds underlying his claim of ineffective assistance of counsel, stating only that he was

previously unaware that he had to exhaust each one, and suggested that he had been attempting

to exhaust those issues in state collateral proceedings. Because Petitioner failed to show good

cause, and because his request for a stay has been twice before denied for the same reason, the

Court construes his response as a request to withdraw the unexhausted grounds for claiming

ineffective assistance of counsel and to proceed with the exhausted grounds only. Therefore, the

unexhausted grounds are deemed withdrawn, and only Petitioner's exhausted arguments are

addressed below.

## DISCUSSION

### Legal Standards Governing 28 U.S.C. § 2254 Petitions

"It is well established that a federal habeas court does not sit to correct a misapplication of

state law, unless such misapplication violates the Constitution, laws, or treaties of the United

States." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002). Indeed, 28 U.S.C. § 2254(a)

expressly provides that "a district court shall entertain an application for a writ of habeas corpus

in behalf of a person in custody pursuant to the judgment of a State court only on the ground that

he is in custody in violation of the Constitution or laws or treaties of the United States." *See also*

*Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Moreover, following the enactment of the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim—(1)
> resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or (2)
> resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting 28 U.S.C. § 2254(b)(1)). This "exhaustion doctrine seeks to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986) (citing *Rose v. Lundy*, 455 U.S. 509, 515 (1982)). "To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (internal quotations and citations omitted). "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 32.

"[I]f a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is . . . then procedurally barred under state law." *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002) (citing *Ramirez v. Attorney Gen. of State of New York*, 280 F.3d 87, 94 (2d Cir. 2001)). If the claim is "deemed exhausted," however, it is also procedurally defaulted and "may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can

show that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rule." *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

In addition, "federal courts may not review the judgment of a state court that 'rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the court's decision.' " *Jimenez v. Walker*, 458 F.3d 130, 136 (2d Cir. 2006) (quoting *Harris v. Reed*, 489 U.S. 255, 260 (1989)). Although the adequate-and-independent-state-ground doctrine originated in cases involving direct review "of state court judgments for which the alternative state and federal grounds were both 'substantive' in nature," the doctrine has been extended to federal habeas corpus proceedings and "has been applied routinely to state decisions forfeiting federal claims for violation of state procedural rules." *Harris*, 489 U.S. at 260-61 (quoting Daniel J. Meltzer, *State Court Forfeitures of Federal Rights*, 99 Harv. L. Rev. 1128, 1134 (1986)). Accordingly, "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Id.* at 262 (internal quotations and citations omitted).

A "state law ground is only adequate to support the judgment and foreclose review of a federal claim if it is 'firmly established and regularly followed' in the state." *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)). "Further, in certain limited circumstances, even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'" *Id.* at 713-14. In *Lee*, the Supreme Court "factored in three considerations to determine that application of the firmly established and regularly followed state procedural rule would be exorbitant[:] ...(1) whether the alleged procedural violation was actually relied on in the trial court,

and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had 'substantially complied' with the rule given 'the realities of trial,' and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest." *Id.* at 714 (quoting *Cotto v. Herbert*, 331 F3d. 217, 240 (2d Cir. 2003)).

### *Petitioner's First Ground – Sufficiency of the Evidence*

Petitioner's first ground for relief—that the evidence presented at trial was insufficient to prove his identity as the assailant—is procedurally barred. The Second Department rejected this argument on the grounds that it was not preserved for appellate review, citing New York's "contemporary objection rule" codified in New York Criminal Procedure Law § 470.05. *People v. Dixon*, 107 A.D.3d 735, 736 (N.Y. App. Div. 2013). It is well-settled that New York's contemporaneous objection rule is an adequate and independent ground that bars federal habeas review. *Kozlowski v. Hulihan*, 511 Fed.Appx. 21, 25 (2d Cir. 2013) ("[T]he contemporaneous objection rule provides an independent state-law ground for barring federal habeas review."); *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) ("[W]e have held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule."); *see also Wright v. Lee*, No. 12-CV-6140, 2013 WL 1668266, at *2 (E.D.N.Y. April 17, 2013) ("It is well settled that New York's contemporaneous objection rule ... is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review."). That the Second Department addressed the merits of the claim after holding that the issue was not preserved for appellate review is of no moment, because "when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits,

14

such a claim is [nevertheless] procedurally defaulted." *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996)); *see also Young v. New York*, No. 11-CV-0110, 2012 WL 6644993, at *12 (E.D.N.Y. Dec. 20, 2012) ("When a state court relies on an independent and adequate state law ground — such as, in this case, failure to preserve the issue for appeal — federal habeas review is foreclosed. This is true even if the state court rules in the alternative on the merits of petitioner's claims.") (citations omitted).

Neither the exception for cause and actual prejudice or actual innocence applies here. "The cause requirement is met if some objective factor, external to [the] [p]etitioner's defense, interfered with his ability to comply with the state's procedural rule." *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012); *see also Maples v. Thomas*, 565 U.S. 266, 279 (2012). A petitioner may show case, for example, by making "a showing that the factual or legal basis for a claim was not reasonably available to counsel at the time of trial." *Gutierrez*, 702 F.3d at 111 (internal quotation marks omitted) (quoting *Stickler v. Greene*, 527 U.S. 263, 283 n.24 (1999)). Prejudice is established when a petitioner shows that the alleged errors resulted in "substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Gutierrez*, 702 F.3d at 112 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); *see also Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003). Here, Petitioner has not alleged circumstances establishing cause external to his defense, and he has not alleged actual innocence.

Moreover, even if Petitioner had shown cause, his argument would fail on the merits and for lack of prejudice. Petitioner essentially contends that testimony at trial did not establish his identity as the man who mugged Vogel because (i) both Greenfeld and Raskin briefly lost sight of him when giving chase, (ii) because of several supposed inconsistencies among the testimony of witnesses, (iii) and because his arrest photo presented him wearing a shirt different from that

described by the government's witnesses. (*See* ECF No. 1 at 15-18). None of these arguments surmount the deference provided in habeas proceedings. None, moreover, invoke or even implicate a decision that was contrary to clearly established Federal law as determined by the Supreme Court of the United States. Rather, each argument is essentially a credibility challenge to identifications made by several witnesses. *See Marshall v. Lonberger*, 459 U.S. 422, 432–36, (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."); *cf. People v. Terrill*, 265 A.D.2d 587, 587 (N.Y. App. Div. 1999) ("The identification testimony of the complainant, who at the time of the robbery had an opportunity to view the defendant at close range under bright lighting . . . was legally sufficient to establish the defendant's guilt beyond a reasonable doubt.") Accordingly, this argument offers Petitioner no basis for relief.

### *Petitioner's Second Ground – Abuse of Sentencing Discretion*

Petitioner contends that the sentencing court abused its discretion by sentencing him as a persistent felony offender. He premises this argument on: (i) the alleged failure to accord him a hearing and notice as required by CPL 400.20, (ii) an allegedly improper determination that his predicate convictions were valid, and (iii) alleged misuse of the sentencing judge's discretion. (ECF No. 1 at 21-31). As explained below, each argument falls short of establishing constitutional violations and therefore lacks merit.

As a preliminary matter, the Court notes that the anti-recidivist or "discretionary persistent felony offender" sentencing scheme under which Petitioner was sentenced has been repeatedly held constitutional in the face of Sixth Amendment *Apprendi* challenges. *See, e.g., Portalatin v. Graham*, 624 F.3d 69, 84 (2d Cir. 2010) (upholding the validity of the persistent felony offender scheme against *Apprendi* challenges because "'prior felony convictions are the sole determin[ant]

of whether a defendant is subject to enhanced sentencing as a persistent felony offender,'" whereas the remainder of the scheme falls under traditional sentencing discretion) (quoting *People v. Rosen*, 96 N.Y.2d 329, 335 (2001)). Thus, to the extent Petitioner challenges the New York sentencing scheme on Sixth Amendment grounds, his claim is without merit.

As for Petitioner's contention that the sentencing court failed to accord him a proper hearing and notice as required by CPL 400.20, he has not exhausted this claim and it is therefore not reviewable under the instant habeas petition. *See Baldwin v. Reese*, 541 U.S. 27, 29, *supra*. In any event, Petitioner has provided no authority (and the Court has found none) suggesting that the alleged deviations from CPL 400.20 violated constitutional rights established by Supreme Court precedent. *See Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) ("It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States.") Rather, petitioner contends here that he did not receive a notice within 20 days of issuance of an order scheduling his preliminary sentencing hearing and therefore did not receive sufficient notice of his predicate convictions. (*See* ECF No. 1 at 24-25). Assuming that to be the case, the Court concludes that these alleged deviations from CPL 400.20 procedure neither deprived Petitioner of constitutional rights nor caused him any other apparent prejudice. Indeed, at the preliminary sentencing hearing his defense counsel summarized at length the evidence he would present to establish "mitigating circumstances" surrounding each predicate conviction (S. at 6-10). Petitioner, moreover, took the stand and admitted, in effect, to each conviction and sought to lessen his culpability by attesting to similar "mitigating" facts. (S. 26-48).

Petitioner's remaining arguments on this point are essentially that the sentencing court abused its discretion and are therefore non-cognizable. Petitioner does not and cannot dispute that

upon the determination of his status as a persistent felony offender, his sentence of 15 years to life imprisonment falls within the statutory range.[4] Rather, he challenges the court's determination that he was a persistent felony offender. That determination turns on two simple variables: (1) whether the defendant has been convicted of two or more qualifying prior felonies, and (2) "findings of fact [that the sentencing court] deems relevant to the question of whether a persistent felony offender sentence is warranted." N.Y. Crim. Proc. Law § 400.20(5), (9). The Second Circuit has made clear that the former is the "sole determinant of whether a defendant is subject to enhanced sentencing as a persistent felony offender," while the latter is merely an exercise of "discretion in determining where within that newly expanded range to impose a sentence." *Portalatin*, 624 at 84. Petitioner is, moreover, precluded from challenging the validity of his predicate convictions. *See Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 403-04 (2001) ("once a state conviction is no longer open to direct or collateral attack . . . the conviction may be regarded as conclusively valid.") His challenge to his status as a persistent felony offender is therefore directed at the court's discretionary findings a matter of necessity. Such claims are not cognizable. *Ariza v. Lee*, No. 13-CV-359, 2013 WL 6008920, at *9 (E.D.N.Y. Nov. 13, 2013) ("The assertion that a sentencing judge abused his or her discretion in sentencing is generally not a federal claim subject to review by a habeas court."); *cf. White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992) (challenges to the term of a sentence are not cognizable if within a sentencing range.)

For these reasons Petitioner's second ground for habeas relief must be rejected.

---

[4] New York Penal Law section 70.10 provides that once defendants are deemed a "persistent felony offender," they "may" be sentenced as though the offense of conviction were a class A–I felony. Thus, persistent felony offenders may be sentenced to an indeterminate sentence in the range authorized for Class A–I felony offenses, instead of the sentencing range authorized for the class of the defendant's actual offense (here, Class D). *See id.* § 70.10(2)*; see also* N.Y. Crim. Proc. Law § 400.20(1)(b). Class A–I felonies carry a minimum period of 15 years and a maximum of life imprisonment. *See* N.Y. Penal Law §§ 70.00(2)(a), 70.00(3)(a)(i).

*Petitioner's Third Ground – Ineffective Assistance of Counsel*

   *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-pronged test for deciding ineffective assistance claims. To satisfy the first prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Specifically, "[a] convicted defendant . . . must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. To satisfy the second prong, a defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court defines "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Id.* Further, "[t]he level of prejudice the defendant need demonstrate lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.'" *Linstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 693). Finally, courts need not address both prongs if it is clear the second is not met. *Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

   Petitioner premises his ineffective assistance claims on several grounds, and each argument lacks merit for failure to establish prejudice. First, Petitioner contends that his counsel violated his right to effective counsel by neglecting to move for dismissal on the ground that the government had failed to establish his intent to steal and, more generally, by failing to move for dismissal on specific rather than general grounds as required to preserve issues for appeal. *See People v. Hawkins*, 11 N.Y.3d 484, 492 (2008) ("As we have repeatedly made clear—and underscore again—general motions simply do not create questions of law for this Court's

review"). Petitioner fails to establish prejudice on this argument because any motions to dismiss would have had no conceivable effect on the outcome of trial. Motions targeting Petitioner's intent to steal would have undoubtedly met denial, considering that both Police officers testified to recovering Vogel's property from Petitioner's person and Vogel testified that Petitioner took that property after threatening him and punching him in the face.

Next, Petitioner contends that his counsel deprived him of effective assistance by failing to object (i) during direct examination of the government's witnesses and (ii) to introduction of Vogel's camera at trial. Petitioner appears to premise the latter argument on his belief that those items could not be authenticated due to chain-of-custody problems created when police officers returned them to the victim. Both arguments are without merit. Defense counsel objected ably and often—and was frequently sustained—to both questions and evidence. (*See, e.g.*, Tr. 9, 43, 203, 215, 217). That he did not object each time the trial court chided the prosecutor for missteps establishes neither deficient performance nor prejudice. Likewise, failure to object to the introduction of Vogel's camera cannot give rise to an ineffective assistance of counsel claim. Assuming that an objection could have prevented introduction of the camera (which is more than doubtful), the absence of the physical camera would have had no conceivable effect on the outcome of the case. The testimony of each Vogel, Mims, and Klass was more than enough to establish beyond a reasonable doubt that Petitioner possessed Vogel's property at the time of his arrest. In sum, defense counsel's failure to object caused Petitioner no prejudice in each instance.

Finally, Petitioner also contends his attorney provided ineffective assistance by failing to object to the government's proposed amendments to the indictment. Petitioner appears to argue here that his counsel failed to object to amendments made at trial that removed robbery in the

first degree and explicitly added robbery in the second degree as a stand-alone charge rather than as a lesser included offense. This argument is fundamentally confused. First, the indictment was never amended. Rather, the Court ruled during a sidebar that the government's own case established an affirmative defense that reduced the robbery in the first degree charge to robbery in the second degree. (Tr. 38, 109-12).[5] Moreover, contrary to Petitioner's general argument on this point, defense counsel did in fact object to allowing a charge of second degree robbery. (*See* Tr. 112-13). He specifically urged the court to dismiss the robbery counts entirely, rather than artificially impose his client's affirmative defense, because robbery in the second degree had not been presented to the grand jury. (*Id.*). The court simply refused to do so. (Tr. 113). Finally, even if counsel *had* failed to object, no prejudice resulted because the jury acquitted Petitioner of each second degree robbery count. Petitioner's remaining arguments—to the extent they are coherent—are either meritless or unexhausted, as explained above.

---

[5] Under Penal Law section 160.15(4), "[a] person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime ... he or another participant ... [d]isplays what appears to be a pistol ... or other firearm." However, it is an affirmative defense that the object displayed "was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged." *Id.* If the defendant proves the affirmative defense by a preponderance of the evidence, the crime is reduced to robbery in the second degree. *See People v. Lopez*, 73 N.Y.2d 214, 219 (1989).

# CONCLUSION

For the reasons set forth above, the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied and the case is dismissed. A certificate of appealability shall not issue because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The Clerk of Court is directed to enter judgment denying the petition and to close this case.

**SO ORDERED.**

/s/ *Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge

Dated: *September 29*, 2017
Brooklyn, New York